UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHARLES V. WHITE, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
|    vs. | ) Cause No. 1:15-cv-2067-WTL-MPB |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
|    Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Charles White requests judicial review of the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("Commissioner"), denying his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). The Court rules as follows.

## I. PROCEDURAL HISTORY

White protectively filed applications for SSI and DIB on August 29, 2012, alleging onset of disability on December 24, 2010. The Social Security Administration initially denied White's application on October 12, 2012. After White timely requested reconsideration, the Social Security Administration again denied his claim on March 7, 2013. Thereafter, White requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on June 5, 2014, at which White testified along with medical expert Lee Fischer, M.D., who is board certified in family practice medicine; Don Olive, Ph.D., who is a licensed clinical psychologist; and Gail

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill automatically became the Defendant in this case when she succeeded Carolyn Colvin as the Acting Commissioner of Social Security on January 23, 2017.

Corn, a vocational expert. The ALJ issued his decision denying White's DIB and SSI applications on August 7, 2014. After the Appeals Council denied White's request for review, he filed this action seeking judicial review.

## II. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent his from doing not only his previous work, but any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b).[2] At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20

---

[2]The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to DIB sections only.

C.F.R. § 404.1520(f).  At step five, if the claimant can perform any other work in the national economy, he is not disabled.  20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred."  *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ.  *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008).  In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony presented," he must "provide an accurate and logical bridge between the evidence and [his] conclusion that a claimant is not disabled." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012).  "If a decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, a remand is required."  *Id.* (citation omitted).

### III.  THE ALJ'S DECISION

The ALJ found at step one that White had not engaged in substantial gainful activity since December 24, 2010, the alleged disability onset date. At step two, the ALJ determined that White had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; chronic obstructive pulmonary disease; borderline intelligence; and depression. The ALJ found at step three that these impairments did not, individually or in combination, meet the severity of one of the listed impairments. The ALJ's residual functional capacity ("RFC") determination was as follows:

> [T]he claimant retains the residual functional capacity to [perform] light work as defined by the regulations  In this regard, the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently, sit for six hours in an eight-hour work day, and stand and walk for six hours in an eight-hour work day.  The

>  claimant can occasionally balance, stoop, and climb ramps or stairs. He can never kneel, crouch, crawl, or climb ladders, ropes, or scaffolds. The claimant should avoid concentrated exposure to extremes of heat and cold, or dust, fumes, and other irritants. He would need to avoid working at unprotected heights. In addition, the claimant can perform simple repetitive work that would de-emphasize literacy skills (e.g., he would receive no written instructions, but would be given verbal instructions instead). The claimant could not work with money. He could not do fast-paced work.

Record at 40. On the basis of this RFC determination, the ALJ concluded at step four that White was unable to perform his past relevant work, but at step five, the ALJ found that, considering his age, education, work experience, and RFC, "there are jobs that exist in significant numbers in the national economy" that he could perform.[3] Accordingly, the ALJ concluded that White was not disabled.

## IV. DISCUSSION

The details of White's medical history are set forth quite thoroughly in the ALJ's decision and White's brief, and need not be repeated here. Facts directly relevant to the Court's analysis are discussed in context below.

White testified that he is unable to sustain full-time work, primarily due to severe pain in his back. Under the standard that was applicable at the time of the ALJ's decision, with regard to subjective symptoms such as pain, if a claimant had a medically determinable impairment that was reasonably expected to produce pain, then the ALJ was required to evaluate the credibility of the claimant's testimony regarding the extent of that pain. "In determining credibility an ALJ must consider several factors, including the claimant's daily activities, [his] level of pain or symptoms, aggravating factors, medication, treatment, and limitations, *see* 20 C.F.R. §

---

[3] The ALJ states in his opinion that "[t]he vocational expert testified that given all of these factors the individual would be able to perform the requirements of other representative unskilled (SVP-2) light jobs existing in significant numbers in the national economy. This class of jobs would include inspector . . . ." Record at 42. Actually, the vocational expert testified that inspector was the *only* job category such an individual could perform.

4

404.1529(c); S.S.R. 96-7p,[4] and justify the finding with specific reasons." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). The regulations further provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2). "The determination of credibility must contain specific reasons for the credibility finding" and "must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008) (citing *Arnold v. Barnhart*, 473 F.3d 816, 822 (7th Cir. 2007)). In addition, "[a]lthough an ALJ's credibility determinations are generally entitled to deference, this Court has 'greater freedom to review credibility determinations based upon objective factors or fundamental implausibilities, rather than subjective considerations' such as the claimant's demeanor." *Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016) (quoting *Briscoe ex rel. Taylor v. Barnhart,* 425 F.3d 345, 354 (7th Cir. 2005)).

In this case, the ALJ determined that White's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent they are not reasonably consistent with the overall evidence of record." Record at 38. While the ALJ's explanation for this determination is quite lengthy, the Court agrees with White that it is nonetheless deficient.

---

[4] S.S.R. 96-7p recently has been superseded by S.S.R. 16-3p, which the agency explained "eliminate[ed] the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term" and "clarif[ied] that subjective symptom evaluation is not an examination of an individual's character."

The ALJ's credibility determination is based in large part on his belief that White's allegations regarding his subjective symptoms were inconsistent with "the relatively modest imaging studies showing no neural involvement." Record at 38. With regard to the imaging studies, the ALJ stated:

> [I]n June of 2014, the claimant finally was able to complete an MRI study of the cervical spine. This evaluation showed only mild degenerative changes, mostly at C3-4 and C4-5. *Quite notably, the test did not show any compromise of the central spine canal or neural foramina, a critical negative finding.* Again, in September 2008, an MRI of the lumbar spine showed that, at L5-S1, there was moderately severe to severe chronic degenerative disc disease. However, there was no narrowing of the spinal canal, and no nerve root impingement. At L1-2, L3-4, L4-5, there was only mild disc degeneration, with no associated disc herniation or narrowing of the spinal canal. Thus, consistent with this evidence, in June of 2014, an Eskanazi clinic nurse practitioner surmised that the claimant had only mild degenerative disc disease in the cervical, thoracic, and lumbar spine.

*Id.* at 30 (citations omitted). Those statements are all true. The problem is that they are grossly incomplete, as they ignore the lumbar MRI that White underwent on the same day as the June 2014 cervical MRI. The report from that MRI appears on the same page as that of the cervical MRI; indeed, it begins immediately after the report from the cervical MRI, on the same line, which might explain why the ALJ missed it. *See id.* at 506. And the lumbar MRI report does, in fact, note neural foraminal narrowing, so the "critical negative finding" relied on by the ALJ is absent in the more recent MRI. In addition, the summary by the "Eskanazi clinic nurse practitioner" (who is actually a certified physician assistant) referred to by the ALJ is also grossly incomplete; it states that White "has a disc bulge at L1-L2," *id.* at 508, when in fact the MRI report notes disc bulge at every level: L1-L2, L2-L3, L3-L4, L4-L5, and L5-S1, as well as mild degenerative spondylolisthesis at several levels and a variety of other findings. No acceptable medical source has opined on the significance of those findings, but the fact that they appear to differ from the years earlier lumbar MRI in a way that was deemed "critical" by the

6

ALJ requires remand for a reevaluation of White's subjective symptoms in light of the June 2014 MRI.[5]

White also notes, correctly, that the ALJ failed specifically to explain what weight he gave to the opinions of Dr. Smith and why. That oversight should be corrected on remand.

Finally, White argues that the ALJ erred by "failing to account for White's severe memory deficits and the impact they would have on his ability to maintain employment." Dkt. No. 16 at 23. However, the ALJ relied on the testimony of psychological medical expert Olive and adapted the mental RFC suggested by Dr. Olive in its entirety. White has not demonstrated that it was error for the ALJ to do so.

## V. CONCLUSION

For the reasons set forth above, the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with the Court's Entry.

SO ORDERED: 3/2/17

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication

---

[5] Review by a doctor will likely be required to aid the ALJ in interpreting the new MRI results. *See Browning v. Colvin*, 766 F.3d 702, 705 (7th Cir. 2014) (noting that administrative law judges are not permitted to "play doctor"); *Israel v. Colvin*, 840 F.3d 432, 439 (7th Cir. 2016) ("There is always a danger when lawyers and judges attempt to interpret medical reports . . . ."). This danger is also evident in the ALJ's determination—without any apparent medical support—that White's credibility was called into question by the fact that he described varying symptoms (e.g. sometimes just pain in his legs, sometimes numbness and tingling; sometimes the right leg, other times the left leg or both legs) at various times. It is entirely possible that White's condition produces intermittent symptoms in his lower extremities, which would explain his varying reports; the ALJ should have asked the medical expert at the hearing about that possibility, and should do so on remand instead of succumbing to the temptation to play doctor to White's detriment.